will now move to the second argument on the calendar. That is United States v. Brooks. Mr. Hill, are you on the line? I am, Judge. Okay. Let's see. I haven't seen you yet. Let me see. Anybody else seeing Mr. Hill? Ah, there he is. Okay. And I'm going to have trouble listening. Dessange? Mr. Dessange? Yes, Your Honor. Mr. Dessange? Yes. Am I saying that right? That's correct, Your Honor. Yes. Okay. Great. So, Mr. Hill, you've got two minutes of rebuttal. So, you'll begin with the eight minutes now. The floor is yours. You may proceed. Thank you, Your Honor. May it please the Court. My name is Benjamin Hill. I represent the with evidence under 15 U.S.C. 1512 subsection C.1. That obstruction statute was the subject of a case that was before the Court last year in United States v. Pew. And in that case, Judge Calabresi wrote a concurring opinion in which he warned of the overexpansion of the scope and the use of this and other obstruction statutes. And he recommended that courts review convictions under these statutes with searching and contextual analysis. And I think if such a review is employed here, there are two points that come to light that I would like to focus my argument on today. The first is that the evidence at trial that was adduced even when viewed in the light most favorable to the government was insufficient to prove the nexus requirement and the foreseeability requirement required by the Supreme Court's precedent in the United States v. Arthur Anderson. And then secondly, that the district court's admission of evidence by the government that was of the government's own creation that is evidence of subsequent initiation of grand jury investigations used in order to prove the foreseeability of non-existent grand jury investigations earlier was substantially prejudicial and with the sufficiency of the evidence argument. There's no dispute in this case that there was no extant official proceeding at the time the alleged crime was committed on April 29, 2017. What the government's theory was, was that at that time, as of that date, a grand jury investigation which did not exist was nonetheless foreseeable to Mr. Brooks. Mr. Brooks was a veteran from Ohio. The proof when viewed in the light most favorable to the government show that he purchased some guns at a gun show in March of 2017, that he sold those guns to three gentlemen from Albany, that those guns made their way back to Albany, New York. And then that about a little after a month later, Mr. Brooks received a series of phone calls and he came back or he came to Albany, retrieved those guns and brought them back to Ohio. The issue here is whether in retrieving those guns, Mr. Brooks was aware that he was the target of an investigation such that he knew or should have known that there was the likelihood of a subsequent grand jury investigation into his actions. The government relies on a series of cases issued by this court, including United States v. Pew, United States v. Binday, United States v. Pericico. And the difference, in all of those cases, sufficiency evidence arguments were rejected on the basis that there was evidence adduced that the defendants in those cases unquestionably knew that they were the targets of federal investigations or worse. Pericico had been contacted and interviewed by the FBI, knew that he was in the crosshairs of the government. In this case, your client was interviewed by ATF agents, right? That is correct, your honor. He was interviewed by ATF agents after he allegedly committed the crime. So he was interviewed by ATF agents on May 3rd of 2017, but he's alleged to have committed the crime that is gone to Albany and retrieved the firearms on April 29th. But, excuse me, at the time he went to Albany to retrieve the firearms, he had previously signed a form 4473, right? Which is the ATF form that he signed under penalty of perjury saying that if you're a straw purchaser, you may be guilty of a felony, right? Correct. And the question is whether it was possible to him that there'd be a grand jury investigation. So at the time he goes to retrieve the guns and bring them back, he knows two things at a minimum. He knows he's committed a felony or likely committed a felony because he read it on the form. And he told the police, right, that he knew he was making a mistake when these guys drove back to Albany. So right off the bat, he knows he's a straw purchaser, again, viewed in the light most favorable to the verdict. And when he's there in Albany, by this point, he's been told that he's got to retrieve them because the police have been sniffing around and he's going to be in trouble, right? And he knows he's going to be in trouble. So he knows he's pulling them away so that they can't be found by the police, right? So he knows he's committed a crime of straw purchasing, and he knows he's taking the guns away in a way that will be detected in the course of his being investigated for the crime, right? What else is left? Well, Judge, I think that you're correct, obviously, that he signed the form and knew potentially that he had committed a crime and knew that he was going to Albany in order to get the guns back. I have to concede that in the light most favorable to the government. I think that the difference is, though, where the investigation was, and importantly, what Mr. Brooks knew or did not know about the status of the investigation. So in other words, it's one thing to say, as the case law in those other cases does, that a defendant is aware that he's a target of an investigation. Here, he had not been contacted by anyone at that point. No subpoena, no warrant, no phone call. So it's a difference of being a potential target and knowing that you are a potential target or a potential suspect versus being aware that you are, in fact, a target as in the other cases. And it gets, Judge, it gets at the nexus requirement between the federal court or a federal grand jury. And so what the government is asking you to do is rely on those prior cases that say defendant is aware that he's a target and take that one step further, further away from the official proceeding requirement, to say that if a defendant, as you suggest, is aware that they've done something wrong and is aware that they could be investigated for a crime related to that, that then that's enough. And I'm... Let me just ask you this, because two points. One is my impression of the cases involving a target was that the court was simply saying that where there is evidence that a defendant is aware he's a target of an investigation, that is sufficient to prove foreseeability. But I didn't read them saying that that is a necessary condition. So that's one thing, and I'd be interested in hearing your view of the cases. My second concern is if we were to accept your rule that a defendant must know that he personally is a target, wouldn't that incentivize, let's call it early witness tampering? So the idea would be, I don't know, once you know there's an investigation afoot and that the police have not yet identified you as the target, well, you should go out and kill the witness now. You should destroy the witness, the evidence now, so that they never find you. So under your theory, if there's a murder investigation and two people have committed the crime, only two people know, the shooter and his accomplice, the shooter then decides, wow, the police are sniffing around. They don't know who's done it yet, but I know that they're looking. I should shoot my accomplice now, so there will be no witnesses. Under your theory, would the shooter be innocent of 1512c witness tampering? And I know your case is a destruction of evidence case, but it's functionally the same thing. Aren't you incentivizing people to destroy things and basically get away with it before the police have identified them, even though they know that there is an investigation? Well, Judge, I don't think that would necessarily be an incentive or that it might not be criminal under other statutes. I think that the issue here is the connection, again, of the act to the official proceeding. Congress could have included in that definition an investigation. They could have made it even broader than it was, but what this statute criminalizes, and setting aside others that may apply to the scenario that you just laid out, what this statute criminalizes interference with the judicial system in the form of judicial proceedings and federal grand jury investigations. I think that as to your first point, whether or not it is necessary versus adequate for the government to prove that the defendant is aware that they're a target, that was the government's theory in this case. That was what they set out to prove. That is what they relied on. I think you're correct that there may be potentially other evidence in other cases that could support a causal connection or a nexus between the defendant's acts and the official proceeding. But in this case, there was not any contact between Mr. Brooks, who I represented at trial, and law enforcement prior to, up until, and including the date that he allegedly committed the crime. Prior contact is not necessary, right? It's just that it's foreseeable. It's not a requirement in the statute, and there's a correct, you are correct, there's not any case law that I've seen from the second circuit saying that contact is a requirement. However, in the other cases upon which the government has relied, there has been direct contact. And I think that the reason that that is an important fact is because it gets at the awareness of the defendant of the likelihood of a grand jury investigation. Again, we're talking about degrees of separation from an extant grand jury investigation that exists, which it did not in this case. So we're talking about a foreseeable hypothetical event and what the defendant knows at that time. And so I think, again, the fact that he was not directly contacted and there was no brought up prior to the time the crime was committed. So again, the difference between knowing that you could become a subject, knowing that you could become a target of a crime, and actually being aware that you are the target of the crime in line with the court's prior precedent, I think is an important distinction. All right. I think we're way over, Mr. Hill. So you've the other point that you wanted to talk about the grand jury then. Okay. So, Mr. Dessange, we'll hear from you. Thank you, your honors. May it please the court. The court should reject Mr. Brooks' challenge to the sufficiency of the evidence. Based on the evidence presented at trial, a reasonable jury could have found the following facts. That Mr. Brooks knew that he had repeatedly violated federal law by straw purchasing 13 guns in Ohio, that he then traveled 500 miles from Ohio to Albany to retrieve those guns because he knew he and the others were under investigation for those straw purchases, and that he made the trip to prevent the guns from being discovered in the hands of the actual purchasers. Mr. Brooks could have simply told the others in New York to dispose of the guns, but he didn't do that because he knew he had to make it look like the guns never left his possession because he was on the hook for the straw purchases. His violations of federal law were under investigation. Given these facts, a jury was entitled to find a nexus between Mr. Brooks' attempt to conceal the weapons and a reasonably foreseeable proceeding, namely a grand jury investigation into his straw purchases and gun trafficking activities of himself and the men in New York for whom he bought the guns. The government does prove that Mr. Brooks acted with a necessary corrupt intent to impair the availability of the weapons as evidence in an official proceeding. I think a couple of your honors have already noted the form 4473 and the gun transaction forms and how they alerted Mr. Brooks to the fact that he was violating federal law. A couple other, I think, evidentiary points bear emphasis. First, that on April 1st, Mr. Brooks was called by his relative, Mr. Marzett, and he was told that the police had found the gun, one gun, that he had purchased in Albany and that Brooks might have to appear in court because of it. So this clearly put Mr. Brooks on notice that there was an ongoing investigation. He then, three weeks later after hearing nothing from the other men in New York, on the same day that one of them, Mr. Grant, had his proffer with ATF agents present who introduced themselves and who asked for his cooperation, Mr. Brooks then received a call from Marcel, who is really the ringleader here. And Mr. Marcel told him, you have to come get the guns now. The heat is on. You've got to come get them now. That clearly supports a reasonable inference that Mr. Marcel told Brooks about the proffer session and that Brooks knew he was the target of an investigation involving ATF agents. And the key here is that Marcel didn't have to call Brooks at all. He could have simply disposed of the guns himself. It was clear that Marcel knew that Mr. Brooks' conduct was the subject of the investigation. And the jury was entitled to infer that that was made clear to Mr. Grant in the proffer session. And that was then conveyed to Mr. Brooks as to why he had to get the guns. He had to travel all that way and why Mr. Brooks took such urgent action to get the guns back from Ohio. Can I ask a question? When in your mind did this tampering crime end? I'm sorry, Mr. Grant. Your Honor, I missed a little bit of that question. Okay. When in your mind did this crime, this evidence tampering end? Your Honor, I think as far as the concealment of the evidence, I think it continued through to May 3rd when he had the interview with the agents. It probably at that point ended during that interview because he was confronted with the agent's knowledge of what he had done. And he made attempts to then come clean with that. And he then brought them up. He showed them the guns voluntarily. So I think at that point, the concealment of the evidence was really over during that interview when he was confronted. I'm sorry, following up on Judge Sullivan's question, what were the dates alleged in the indictment for the offense? I don't see that in the appendix. Your Honor, yes, the indictment was not included in the appendix. But the date, what the indictment says was that, one second, I'm sorry. The indictment says that the date is April 29th of when he attempted to conceal or destroy the weapon. But what we would argue as far as why this wasn't an amendment to the indictment to later was that it shows Mr. Marcel's intent. And he was continuing to obfuscate where the weapons actually were. But the date... Your Honor, just to follow up on that, and I just want to make sure I understand your argument. Are you arguing that the government's position is that the act as Reyes was only on that one date of April 29th, and I don't have the indictment in front of me either, and that the later evidence was relevant to prove that crime was committed on April 29th? Or are you... Maybe this is where Judge Sullivan's question is going. Are you arguing that you charged and proved a continuing offense that lasted beyond April 29th? I guess, Your Honor, I guess I would go to the former. I think what the indictment can be read to say, and it's on page 17 of our brief, on or about April 29th, in Albany County, Mr. John Brooks did attempt to corruptly conceal one or more objects. So I think, Your Honor, as far as the act as Reyes, I think it's the retrieval of the guns from Albany County that we're alleging. The May 3rd interview, though, I think is still highly relevant to his intent in doing that. I would like to also address the Pew case, because I think that is a good kind of marker here. Yes, Judge Calabresi did concur in that decision, but he also said that he signed on fully to the decision that the defendant in that case had the necessary corrupt intent. And if you look closely at the facts of that case, I think the evidence here is arguably even stronger. The defendant in that case attempted to enter Turkey. At the Istanbul airport, he was not allowed to enter the country. There's no suggestion in Pew that the authorities at that point said, look, you're under investigation for terrorism. They disallowed his entry, so he flew back to Egypt. But while he was in the Istanbul airport, he attempted to destroy and wipe his USB drives, which contained incriminating evidence of his effort to join ISIS. But again, nothing in Pew suggests that the defendant knew at that time that he was going to be detained or investigated in Egypt. And so I think that arguably the cases here, the facts here are stronger because Mr. Brooks received multiple phone calls, and then he had numerous back and forth phone calls with the additional members of the crew that came to get the guns in Ohio. And I think the jury was well within its rights to infer that he was aware, clearly aware that he was the target of an investigation, and therefore that he was reasonably foreseeable to him that a grand jury investigation would occur. I'm not sure of my time at this moment, but if I have another minute or You have a minute 40. Okay, thank you. Just to touch on the admission of the subsequent grand jury proceedings. I think the defendant here has not shown a manifest error in the admission of that evidence. The admission of the evidence was relevant to the jurisdictional element, although the statute says that we don't have to prove Mr. Brooks's intent to obstruct a proceeding, the government still had to prove that the proceeding was in fact a federal one, and by extension, the investigation was a federal one. And we did that during the trial with Mr. with TFO Hyde's testimony talking about his investigation, and the joint nature of the investigation with ATF and local officials, and the fact that he testified in front of a federal grand jury in Albany. The mentions of the Northern District of Ohio grand jury were very brief. The judge gave strong limiting instructions as to the purpose of that evidence and what it could be used for and what it could not be. And again, the fact that an event occurs, I think is relevant, if not, it's not dispositive, but it's relevant to whether that event is foreseeable. And again, I think it would have left, not introducing this evidence would have left the jury with a misimpression that no proceeding occurred. So again, given the limiting instructions and the way the judge treated the evidence, I don't think there was any manifest error in the inclusion of that evidence to trial. Thank you, your honors. Okay, thank you. We'll now go back to Mr. Hill for two minutes. Thank you, judge. I'd like to pick off where counsel left off. I think we're going down a dangerous road if we're going to allow the government to prove the foreseeability of one grand jury investigation with proof that subsequent grand jury investigations of its own initiation and own instigation occurred. I disagree with counsel that those subsequent grand jury investigations are relevant to prove the foreseeability as of April 29th, 2017. And even to the extent they are, I think it's highly, highly prejudicial in particular in this case, because the proof of foreseeability and the nexus was so thin. Secondly, the issue about the actus reus and the question that judge asked, I think is right on. And counsel has stated that the actus reus was complete on April 29th of 2017. But in their closing argument, the government argued that the actus reus, that is the concealment and impairment of the evidence continued outside of the district of the Northern District of New York into Ohio as part of the actus reus over my objection. And the jury was permitted to hear that argument. Lastly, with respect to the United States versus Pew, in that case, if you look at the record from the district court and the decision from the district court, it's clear that Mr. Pew, unlike Mr. Brooks, my client in this case, Mr. Pew, when he was arrested in Turkey, he knew that they knew that he was a member of ISIS and that he was going to be deported and charged upon arrival in the United States. Mr. Brooks had no such knowledge at the time that he allegedly committed this crime. And I'll end there. Thank you very much. All right. Thank you, Mr. Hill. Thank you, Mr. DeSange. Well argued. We will reserve decision. We'll